UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARVINAS OPERATIONS, INC., ARVINAS ANDROGEN RECEPTOR, INC., ARVINAS ESTROGEN RECEPTOR, INC., <br><br> Plaintiffs and Counterclaim-Defendants, <br><br> vs. <br><br> YIMIN QIAN, ACCUTAR BIOTECHNOLOGY, INC., <br><br> Defendants and Counterclaim-Plaintiffs. | 3:22-CV-00717-RNC <br><br><br><br><br><br> November 20, 2024 |

**RULING ON DEFENDANTS'
MOTION TO STRIKE AND COMPEL (ECF NO. 235)**

In this action, Plaintiffs and Counterclaim-Defendants Arvinas Operations, Inc., Arvinas Androgen Receptor, Inc., and Arvinas Estrogen Receptor, Inc. (collectively, "Arvinas") accuse Defendants and Counterclaim-Plaintiffs Accutar Biotechnology, Inc. ("Accutar") and Dr. Yimin Qian (collectively, with Accutar, the "Accutar Defendants") of misappropriating proprietary, confidential, and trade secret information relating to Arvinas' protein degrader programs. ECF No 1. Pending before the Court is the Accutar Defendants' Motion to strike and supplement Arvinas' responses to several of their Joint Interrogatories and reduce the number of trade secrets Arvinas

accuses the Accutar Defendants of misappropriating. ECF No. 235. For the reasons that follow, the Motion to Strike and Compel is DENIED.

I. **Background**

Arvinas is a biopharmaceutical company that develops drug therapies to treat diseases by degrading disease-causing proteins. ECF No. 1, ¶¶ 2, 7. Among them are an "AR Program" to treat certain kinds of prostate cancer and an "ER Program" to treat certain kinds of breast cancer. *Id*., ¶ 2. Because it takes "years" of researching and evaluating "thousands" of potential protein degraders before such programs reach the clinical stage, Arvinas seeks to maintain the secrecy of its findings by requiring employees to sign a Proprietary Information and Assignment Agreement. *Id*., ¶¶ 46, 63, 72, 81-90. It specifies that "any and all technical and non-technical information" relating to Arvinas' protein degradation programs, including "research, experimental work, development, design details and specifications," are Arvinas' trade secrets. *Id*., ¶ 82. And it restricts the use and disclosure of such trade secrets "at all times," including "during [an employee's] employment by [Arvinas] and after termination of such employment." *Id*., ¶ 84.

Arvinas employed Dr. Qian as a "lead scientist" between April 2014 and December 2018. *Id*., ¶¶ 70-71, 80. As a condition of his employment, he signed a Proprietary Information and Assignment Agreement in January 2014 (the "Agreement"). *Id*., ¶ 72. Dr. Qian agreed to (1) refrain from using or disclosing any trade secrets without first obtaining Arvinas' written consent; (2) assign to Arvinas his "entire right, title, and interest in and to" any protein degradation information that he developed while employed by Arvinas and within six months after leaving Arvinas; (3) refrain from being employed by "any business competing with" Arvinas for one year after leaving Arvinas; and (4) inform any future employers of the "restrictions" contained in the

Agreement. *Id*., ¶ 81-91. Subsequently, Dr. Qian had access to all manner of Arvinas' trade secrets, "including details of the AR Program and ER Program." *Id*., ¶ 73.

In December 2018, Dr. Qian left Arvinas to join Accutar, an "AI-empowered drug discovery company." ECF No. 106, ¶ 9. "Within months" of employing Dr. Qian, Accutar began filing new patent applications for protein degraders. ECF No. 1, ¶ 100. Arvinas responded by filing its Complaint in May 2022, claiming, *inter alia*, that Dr. Qian violated the Agreement by providing Accutar with its trade secrets and that Accutar misappropriated those trade secrets by including them in its patent applications. *Id*., ¶¶ 99, 123-210. Accutar and Dr. Qian deny these allegations and counterclaim, *inter alia*, that the Agreement's provisions are unenforceable, that the information included in Accutar's patent applications is Accutar's, and that Arvinas is attempting to "gain access to Accutar's proprietary technology through [this] lawsuit." ECF No. 106, ¶¶ 1-4, 135-167.

Discovery began, in earnest, in February 2024, when the Court ordered the Accutar Defendants to produce "documents relating to and created by or on behalf of Arvinas that are in [their] possession or control." ECF No. 138, at 1. Arvinas then learned "for the first time" of several devices used by Dr. Qian at Accutar "containing a massive amount of Arvinas confidential information." ECF No. 234, at 9. Accordingly, in May 2024, Arvinas supplemented its responses to the Accutar Defendants' interrogatories to increase the number of trade secrets it accuses them of misappropriating from "126" to "853," and to provide evidence thereof. ECF No. 249, at 6. The Court held a discovery conference in July 2024. ECF No. 234. Arvinas represented that the "large number of trade secrets" was a "direct consequence of what [it] learned in discovery," that its responses are as specific as reasonably possible because it does not "have a full complete picture yet of the extent of the use and . . . of how far the trade secrets were circulated among various

3

parties," and that "at the end of discovery, [it] may very well have to supplement [its responses to] these contention interrogatories again." *Id*. at 11-14; *see also* ECF No. 249, at 41.

"Discovery in this case is ongoing." ECF No. 285, at 1. Arvinas and the Accutar Defendants have "reviewed and produced thousands of documents" and still "have over a hundred thousand documents to review." *Id.* at 2, 3. The Court granted a Joint Motion to Modify the Scheduling Order in October 2024 based on representations that both Arvinas and the Accutar Defendants "are still working on reviewing documents" and "need more time to comply with their discovery obligations." *Id*. at 3.

## II. The Motion to Strike and Compel

The Accutar Defendants filed the present Motion in July 2024. ECF No. 235. First, they ask the Court to strike Arvinas' responses to Joint Interrogatories 1, 3, and 4. *Id*. at 1. Joint Interrogatory 1 asks Arvinas to identify every trade secret that it accuses the Accutar Defendants of misappropriating. *Id*. Joint Interrogatory 3 asks Arvinas to describe how it maintained the secrecy of each of those trade secrets. *Id*. And Joint Interrogatory 4 asks Arvinas to identify how the Accutar Defendants misappropriated each of those trade secrets. *Id*.

Second, the Accutar Defendants ask the Court to compel Arvinas to supplement its responses to these Joint Interrogatories with additional details within seven days, and to organize its responses in the form of a chart. ECF No. 237, at 11.

Third, the Accutar Defendants ask the Court to order Arvinas to reduce the number of trade secrets it accuses Accutar of misappropriating from "853" to a more "manageable" number over the course of discovery, such as "75" or "50." *Id.* at 7, 11, 28.

Finally, the Accutar Defendants seek an award of attorney's fees and costs. *Id*. at 12.

### III.    Discussion

"Courts have universally recognized that defining the scope of discovery in trade secrets cases can be particularly difficult, because there is highly sensitive information and proprietary concerns on both sides." *Uni-Systems, LLC v. U.S. Tennis Ass'n*, No. 17-cv-147 (KAM) (CLP), 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (citing cases, including *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 679 (N.D. Ga. 2007)). "To address the scope of discovery," trade secrets plaintiffs must identify their alleged trade secrets with "reasonable particularity" by providing "enough information about [them] (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow [the] defendant to discern the relevancy of any discovery requests." *Id*. (quoting *DeRubeis v. Witten Techs., Inc.,* 244 F.R.D. at 681). The "reasonable particularity" standard is necessarily "flexible" and "varies with the facts and stage of the case." *Id*. (citing cases, including *Storagecraft Tech. Corp. v. Symantec Corp*., No. 2:07 cv 856 CW, 2009 WL 361282, at *2 (D. Utah Feb. 11, 2009)). However, it "does not create a procedural device to litigate the merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists" and was actually misappropriated. *Id.* at *4 (citing *Prolifiq Software, Inc. v. Veeva Sys., Inc*. No. C 13-03644, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014)). On the contrary, a "very general showing may be sufficient in the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated or cannot determine the full scope of its claims until it gains a better understanding of how a defendant operates." *Id*. (citing *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1154 (D. Or. 2015) (quoting *DeRubeis v. Witten Techs., Inc.,* 244 F.R.D. at 680)); *see also Success Systems, Inc. v. CRS, Inc.*, 3:21-cv-01391 (SVN), 2023 WL 2403940 (D. Conn. Mar. 8, 2023) (citing *Uni-Systems, LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4).

For the reasons that follow, the Court concludes that Arvinas has responded with sufficient particularity to Joint Interrogatories 1, 3, and 4 at this stage of the litigation, while substantial discovery remains, to put the Accutar Defendants on notice of the nature of its claims and allow them to discern the relevancy of discovery requests. The Motion to Strike and Compel is therefore DENIED.

### A. Joint Interrogatory 1: Reasonable Particularity

The Accutar Defendants argue that the Court should strike Arvinas' response to Joint Interrogatory 1 because it is not reasonably particular, as Arvinas sometimes references "unclear, undocumented, or undefined" information, "junk documents," or "plainly non-confidential" material to identify some of its trade secrets. ECF No. 237, at 14-15. The Court disagrees.

In *Success Systems*, the Court found that a trade secrets plaintiff had not identified its trade secrets with reasonable particularity when it provided the defendant with an "incomprehensible" spreadsheet, "devoid of responsive information" and "using incomplete sentences, meaningless terms, and references to . . . unspecified . . . documents." 2023 WL 2403940, at *2. That is not the case here. Arvinas' response to Joint Interrogatory 1 is detailed. The "vast majority" of alleged trade secrets "relate to particular . . . molecules or chemical fragments" and "specific therapeutic programs" developed by Arvinas, and reference "specific [Arvinas] documents that are . . . in [the Accutar Defendants'] possession." ECF No. 249, at 12-13. *Compare with Loop AI Labs Inc. v. Gatti*, 195 F.Supp.3d 1107, 1114 (N.D. Cal. 2016) (a trade secrets plaintiff does not identify its trade secrets with reasonable particularity when it "simply lists categories of alleged trade secrets in broad terms," "echoes [the] description of its [trade secrets] as pleaded in the [complaint]," and "lists unnamed experiments, test results, research, analysis, evaluations, applications, and design concepts").

6

Indeed, the Accutar Defendants have demonstrated that Arvinas has provided "enough information about [its] alleged trade secrets" to put Arvinas "on notice" of its claims and "allow [them] to discern the relevancy" of discovery requests, at least at this stage of the litigation. *Uni-Systems, LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4. The Accutar Defendants have answered Arvinas' Complaint with both counterclaims and affirmative defenses. ECF No. 106. They have "conducted a lengthy search-term negotiation process, including repeated exchanges and discussions" with Arvinas. ECF No. 285, at 1. They have even moved to compel Arvinas to expand discovery by including "additional document custodians who have unique, relevant information regarding the issues in dispute" and "[additional] key search terms regarding the alleged trade secrets at issue." ECF No. 281, at 1. *See Uni-Systems, LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904 at *4 (denying a motion to compel more specific interrogatory responses from a trade secrets plaintiff because the defendants had "answered the Complaint, suggesting an ability to defend the action" and "were able to discern enough information about the alleged trade secrets to draft . . . follow-up questions," suggesting an ability assess the relevancy of certain discovery).

The Court finds the cases primarily relied upon by the Accutar Defendants in support of their Motion to be irrelevant, as they concern the particularity of disclosures after completion of discovery, at the summary judgment stage. *See, e.g.*, *Big Vision Private Ltd. v. E. I. DuPont De Nemours & Co*. 1. F. Supp. 3d 224, 229, *aff'd sub nom. Big Vision Private Ltd. v. E. I. du Pont de Nemours & Co.* 610 F. App'x 69, 71 (2d. Cir. 2015); *Medidata Sol. Inc. v. Veeva Sys., Inc.,* 17 Civ. 589 (LGS), 2021 WL 467110, at *1 (S.D.N.Y. Feb. 9, 2021). "If the content" of Arvinas' response to Joint Interrogatory 1 "does not amount to trade secrets," then the Accutar Defendants "may press such an argument at summary judgment." *CapRate Events, LLC v. Knobloch*, 17-CV-

7

5907-NGG-SJB, 2018 WL 4378169, at *3 (E.D.N.Y. Mar. 9, 2018).  At this stage of the litigation, however, Arvinas has responded to Joint Interrogatory 1 with sufficient particularity.

The Court therefore DENIES the Accutar Defendants' request to strike Arvinas' response to Joint Interrogatory 1.  However, because Arvinas acknowledges that some of its references "do not reflect confidential information," the parties may (at the Accutar Defendants' request) meet and confer within fourteen days of this Order to identify such references.  ECF No. 249, at 39 n. 19.  Arvinas shall remove and/or supplement such references within fourteen days of meeting and conferring with the Accutar Defendants.

### B.  Joint Interrogatory 1:  Sheer Numerosity

The Accutar Defendants argue that the "sheer numerosity" of trade secrets Arvinas accuses them of misappropriating demonstrates the "overbreadth" of its claims and warrants a Court-ordered reduction from "853" to "75" or "50."  ECF No. 237, at 11, 25-27.  The Court disagrees.

It is not *per se* unreasonable for Arvinas to identify hundreds of trade secrets in response to Joint Interrogatory 1.  Courts regularly permit trade secrets plaintiffs to do so.  *See, e.g., Gemedy Inc. v. The Carlyle Grp. Inc.,* No. 23-cv-00157, ECF No. 178 (D. Del. May 1, 2024) (denying a motion to compel certain supplementary responses for each of the 643 alleged trade secrets); *MicroVention, Inc. v. Balt USA, LLC*, No. 8:20-cv-02400-JLS-KES, 2023 WL 4316880, at *3 (C.D. Cal. May 3, 2023) (noting, as the basis for denying a motion to compel, "that there are thousands [of] alleged trade secrets does not mean that each one has not been sufficiently identified").  Nor is it unreasonable given the facts of this case.  The large number of trade secrets that Arvinas accuses the Accutar Defendants of misappropriating is "a reflection of the fact that" they allegedly possessed "an even larger amount of confidential Arvinas information than [it] initially suspected" when it filed its Complaint in May 2022.  ECF No. 249, at 7.  Understandably,

the Accutar Defendants are displeased by the large number of trade secrets Arvinas accuses them of misappropriating. At this stage of the litigation, however, there is no basis for the Court to arbitrarily cap that number. Arvinas' list of trade secrets may yet increase or decrease as discovery progresses and the parties uncover "a full complete picture" of the underlying facts. ECF No. 234, at 11. Whether any of these alleged trade secrets actually constitutes a trade secret is a merits questions to be resolved at a later time, after discovery. *See CapRate Events, LLC v. Knobloch*, 2018 WL 4378169, at *3. Accordingly, the Accutar Defendants' request for a reduction of Arvinas' trade secrets is DENIED.

### C. Joint Interrogatories 3 and 4

The Accutar Defendants argue that Arvinas' responses to Joint Interrogatories 3 and 4 are not reasonably particular, as they do not "identify reasonably protective measures for each alleged trade secret" or contain "citations or references by number to any of the alleged trade secrets disclosed in response to [Joint] Interrogatory No. 1." ECF No. 237, at 16, 18. The Court disagrees.

The reasonable particularity standard entitles the Accutar Defendants to "an explanation of [Arvinas'] theory of the case before [Arvinas] gets the benefit of [their] discovery." *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.,* No. 3:12CV220 (WWE), 2012 WL 3113162, at *2 (D. Conn. July 31, 2012). Arvinas' responses to Joint Interrogatories 3 and 4 sufficiently lay out its theory of the case. It details the various "companywide" confidentiality policies, protocols, and agreements that applied to Dr. Qian, such as the Agreement. ECF No. 249, at 43. It alleges how Dr. Qian disclosed its trade secrets to Accutar in violation of the Agreement and how Accutar used them in its various patent applications. *Id*. at 41, 43. The Court acknowledges that Arvinas references its trade secrets generally, such as by "subject matter," in its responses to these Joint Interrogatories. ECF No. 249, at 41. However, such a "general showing" is sufficient here, *see*

*Uni-Systems, LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4, as Arvinas does not yet know "the exact and full scope of all instances of misappropriation and every misappropriated trade secret" because "discovery is far from complete." ECF No. 249, at 41. Accordingly, the Court DENIES the Accutar Defendants' request to strike and supplement these responses.

### D. The Scope of the Complaint

The Accutar Defendants argue that some of the trade secrets that Arvinas accuses them of misappropriating are beyond the scope of the Complaint, as they relate to protein degraders that are "completely separate" from its AR and ER programs. ECF No. 237, at 17. Arvinas has primarily focused this case on trade secrets concerning AR and ER protein degraders, but that does not mean that Arvinas must focus "exclusively" on such trade secrets as discovery progresses. *Id.* at 33. The allegations in the Complaint are broad enough to include information regarding AR protein degraders, ER protein degraders, other types of protein degraders, and all manner of Arvinas' trade secrets. *See* ECF No. 1, ¶ 73 ("Qian had access to trade secret, confidential, and proprietary information regarding Arvinas' targeted protein degradation therapeutics, *including* details of the AR Program and the ER Program. . .") (emphasis added); *Id.*, ¶ 99 ("Qian provided Accutar proprietary, confidential, and trade secret information of Arvinas' related to Arvinas' protein degradation programs, *including* non-public information about Arvinas' AR Program and ER Program") (emphasis added); *Id.*, ¶ 123 ("Accutar improperly received and used confidential, trade secret, and/or proprietary information taken by [Dr.] Qian from Arvinas. . .").

As discovery progresses and the focus of this case necessarily shifts, Arvinas may amend its Complaint to address, with greater detail, trade secrets unrelated to the AR or ER programs. *See* ECF No. 285, at 4; ECF No. 287. The deadline to do so has not yet passed. *Id.* Arvinas will "very likely" supplement its responses to the Joint Interrogatories to further substantiate, broaden,

10

or even narrow, its claims. ECF No. 249, at 43. In the meantime, the Court will not permit the Accutar Defendants to "litigat[e] summary judgment and motion to dismiss arguments" during discovery. *CapRate Events, LLC v. Knobloch*, 2018 WL 4378169, at *2.

### IV. Conclusion

For all the foregoing reasons, the Motion to Strike and Compel is DENIED. The parties are ORDERED (at the Accutar Defendants' request) to meet and confer within FOURTEEN DAYS to identify any non-confidential references in Arvinas' response to Joint Interrogatory 1. Arvinas is ORDERED to remove and/or supplement such non-confidential references with reasonably particular information within FOURTEEN DAYS of meeting and conferring with the Accutar Defendants. Given this outcome, the request for attorney's fees and costs is DENIED.

This is not a Recommended Ruling. This ruling and order is a "determination of [a] nondispositive motion[ ] . . . relating to discovery." D. Conn. L. Civ. R. 72(C)(2). As such, it is reviewable pursuant to the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2. It is an order of the Court unless reversed or modified by U.S. District Judge Robert N. Chatigny in response to a timely objection under Local Rule 72.2(a).

SO ORDERED.

                                               */s/ Maria E. Garcia, USMJ*
                                                     Hon. Maria E. Garcia
                                             United States Magistrate Judge